UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACOB DANIEL WOLF,<br><br>Plaintiff,<br><br>v.<br><br>RALPH DIAZ, et al.,<br><br>Defendants. | No. 2:20-cv-0206 DB P<br><br>ORDER AND<br><br>FINDINGS AND RECOMMENDATIONS |

     Plaintiff is a state prisoner proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983 and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

     Plaintiff has submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis will be granted.

     Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated for monthly payments of twenty percent of the preceding month's income credited to plaintiff's prison trust account. These payments will be forwarded by the appropriate agency to the Clerk of the Court each time

1

the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full.  28 U.S.C. § 1915(b)(2).

## I.     Screening Requirement

The in forma pauperis statute provides, "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

## II.    Pleading Standard

Section 1983 "provides a cause of action for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws of the United States." Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting 42 U.S.C. § 1983). Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. Graham v. Connor, 490 U.S. 386, 393-94 (1989).

To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Ketchum v. Alameda Cnty., 811 F.2d 1243, 1245 (9th Cir. 1987).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. Facial plausibility demands more than the mere possibility that a defendant committed misconduct and, while factual allegations are accepted as true, legal conclusions are not. Id. at 677-78.

## III.   Plaintiff's Allegations

At all times relevant to this action, plaintiff was a state inmate housed at California Correctional Center ("CCC") in Susanville, California. He names as defendants Ralph Diaz,

Secretary of the California Department of Corrections and Rehabilitation ("CDCR"); CCC Warden Suzanne Peery; S. Gates, Chief of Medical Appeals; Dr. Jennifer Villa, a CCC medical provider; and Dr. Kashif Ali, CCC Chief Medical Executive.

Plaintiff's allegations may be fairly summarized as follows:

Plaintiff has been incarcerated in CDCR custody since April 2014. With a background in carpentry, plaintiff has worked at various institutions as a maintenance mechanic, a farm worker, a day laborer, a painter, and a maintenance and repairman.

On July 17, 2019, plaintiff was approved for transfer to a fire camp by a classification committee at Pelican Bay State Prison. His work assignment there would be similar to his previous work assignments at CDCR, namely, repairs of broken items; his work assignment would not include fighting fires. Plaintiff was then transferred to CCC (a fire camp administration facility) where a second classification committee approved the transfer to the fire camp.

As a second-striker, plaintiff is currently eligible to receive a 33% good conduct credit on his sentence for each day served. If he is transferred to a fire camp, plaintiff is able to earn a 66% good time credit pursuant to California Code of Regulations title 15 Section 3043.2(5)(c).

Relevant to this action, plaintiff has COPD and hypertension. According to the CDCR Health Care Department Operations Manual, there are certain requirements for inclusion to a fire camp in a non-firefighting capacity. See Compl. Attach. (ECF No. 1 at 9.) These requirements include a "full duty" functional capacity, an "OP" level of care, an "infrequent" proximity to consultation, a "medium risk (or less)" medical risk, and "basic" nursing care acuity. Id. Per plaintiff's permanent medical classification chrono, he meets each of these criteria despite his medical diagnoses. See id.

On September 10, 2019, plaintiff was taken to CCC's R&R for transport to the fire camp. As the bus was being loaded, though, plaintiff was pulled back. On September 18, Dr. Villa told plaintiff that he could not go to fire camp because of the COPD and hypertension. Dr. Villa later changed plaintiff's medical classification to limited duty functional capacity, but it was changed back to full duty after plaintiff protested.

On October 29, 2019, Dr. Kashif Ali stated that he wanted to monitor plaintiff's condition. Plaintiff counters that he has had the same medical diagnosis for three years, has been stable during that time, and does not need to be monitored. He also claims that he is already at a high elevation with no medical problems, so a transfer to a fire camp should pose no risk to him.

Plaintiff filed an appeal regarding Dr. Villa's refusal to transfer him to the fire camp. Defendant Gates denied the appeal at the headquarters level for the same documented medical reasons that Dr. Villa denied plaintiff's transfer.

Plaintiff claims that each of the defendants is complicit in denying plaintiff an accommodation under the Americans with Disabilities Act.

By way of relief, plaintiff seeks damages of $175 per day that he has been denied access to the fire camp program. He also seeks an order for placement in a fire camp.

**IV.    Discussion**

Title II of the Americans with Disabilities Act ("ADA") prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability, 42 U.S.C. § 42 U.S.C. § 12131 *et seq.* "The ADA broadly 'defines "public entity" as "any State or local government [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government."' Armstrong v. Wilson, 124 F.3d 1019, 1023 (9th Cir. 1997) (quoting 42 U.S.C. § 12131(1))." Lee v. City of Los Angeles, 250 F.3d 668, 691 (9th Cir. 2001). "Hence, the ADA applies to state prisons." Id. (citing, inter alia, Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206, 209 (1998)).

To state a claim of disability discrimination under Title II of the ADA, a plaintiff must plausibly allege four elements: "(1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004) (citations and

internal quotation marks omitted); accord, Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010).

Plaintiff's complaint states a cognizable claim for relief under Title II of the ADA. Specifically, plaintiff claims: (1) that he is an individual with a disability, i.e. COPD and hypertension, (2) he is otherwise qualified to participate in the CDCR's fire camp program, (3) he has been excluded from participating in the fire program, and (4) such exclusion is by reason of his disability. Further, plaintiff's complaint, when liberally construed, contends that the defendants, by refusing to allow plaintiff to participate in the fire camp program, have not made reasonable accommodations to avoid discriminating against plaintiff on the basis of his disability.

While plaintiff does state an ADA claim, he has named an excessive number of defendants. The proper defendant in an ADA action is the public entity responsible for the alleged discrimination. United States v. Georgia, 546 U.S. 151, 153 (2010). Defendants may not be sued in their personal capacities under the ADA. Valenzuela v. Masoon, 730 Fed. Appx. 524, 524 (9th Cir. 2018) (citing Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002) ("The ADA applies only to public entities[.]")). Accord, Garcia v. S.U.N.Y. Health Sciences Center, 280 F.3d 98, 107 (2d Cir. 2001) ("[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." (citations omitted)). Defendants "may be sued in their official capacities because suing an individual in his official capacity is treated the same as suing the entity itself." Becker v. Oregon, 170 F. Supp. 2d 1061, 1066 (D. Or. 2001) (citing Kentucky v. Graham, 473 U.S. 159, 166 (1985)). Here, plaintiff does not specify in what capacity he sues the five named defendants. Assuming that plaintiff intends to proceed against them in their official capacities, under the standards, the only appropriate individual defendant would be Suzanne Peery, in her official capacity as CCC Warden. Accordingly, plaintiff's ADA claim should be dismissed as to the remaining defendants.

Ordinarily, a plaintiff is not entitled to monetary damages against defendants in their official capacities. Aholelei v. Department of Public Safety, 488 F.3d 1144, 1147 (9th Cir. 2007) ("The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials in their official capacities."). However, the Eleventh Amendment

does not bar ADA suits against state officials in their official capacities for injunctive relief or damages. See Phiffer v. Columbia River Corr. Inst., 384 F.3d 791, 792–93 (9th Cir. 2004).

Although plaintiff may proceed under Title II of the ADA for monetary damages against defendant Perry in her official capacity, he may only do so if he shows discriminatory intent. See Ferguson v. City of Phoenix, 157 F.3d 668, 674 (9th Cir. 1998). To show discriminatory intent, a plaintiff must establish deliberate indifference by the public entity. Duvall v. County of Kitsap, 260 F.3d 1124, 1138 (9th Cir. 2001). Deliberate indifference requires: (1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood. Id. at 1139. The first prong is satisfied when the plaintiff identifies a specific, reasonable and necessary accommodation that the entity has failed to provide, and the plaintiff notifies the public entity of the need for accommodation or the need is obvious or required by statute or regulation. Id. The second prong is satisfied by showing that the entity deliberately failed to fulfill its duty to act in response to a request for accommodation. Id. at 1139-40. Plaintiff has satisfied both of these criteria, first by pointing to regulations that specifically authorize his inclusion in the fire camp program, and second by referencing an inmate grievance that was resolved through the final level of appeal in which he sought access to the program.

Finally, to the extent plaintiff may be attempting to assert a separate claim of a constitutional violation under 42 U.S.C. § 1983 for being denied participation in the fire camp program, plaintiff fails to state such a claim. A prisoner possesses no constitutional right to participate in vocational or rehabilitation programs while in prison. Hoptowit v. Ray, 682 F.2d 1237, 1254-55 (9th Cir.1982). Additionally, a violation of the ADA does not state a claim for relief under § 1983; "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his] individual capacity to vindicate rights created by Title II of the ADA." Vinson v. Thomas, 288 F.3d 1145, 1156 (9th Cir. 2002). Accordingly, any asserted § 1983 claim based on plaintiff's exclusion from the fire camp program or the denial of plaintiff's rights under the ADA will be dismissed with prejudice.

As an aside, the Court note that plaintiff has filed a request seeking a retroactive grant of enhanced credit earnings. (ECF No. 9.) Plaintiff claims that, had he been transferred to the fire

1  camp on September 10, 2019, he would have been entitled to the 66% good time credits, which

2  would have made him eligible for release in November 2020. As it stands, though, plaintiff won't

3  be eligible for release until January 23, 2022. This form of relief is not enumerated in the

4  complaint. See Compl. at 8. If plaintiff intends to pursue the retroactive grant of good time

5  credits, he is forewarned that, when a plaintiff challenges the legality or duration of his custody

6  that could entitle him to an earlier release, his sole federal remedy is a writ of habeas corpus.

7  Preiser v. Rodriguez, 411 U.S. 475 (1973). If plaintiff intends to amend his prayer for relief to

8  seek the retroactive good time credits, he shall file a motion to do so.

**V.   Conclusion**

Plaintiff's complaint states a cognizable ADA claim against Warden Peery. All remaining claims and defendants will be dismissed. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis (ECF No. 2) is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. The Clerk of the Court is directed to randomly assign a United States District Judge to this action.

4. In accordance with 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c), the Court has screened and found service of the complaint appropriate. If a defendant either waives service or is personally served, the defendant is required to reply to the complaint. 42 U.S.C. § 1997e(g)(2).

5. In accordance with this Order, service is appropriate for CCC Warden Suzanne Peery.

6. Service shall be initiated on the following Defendant:

   a. **Suzanne Peery**, employed at California Correctional Center as Warden.

7. Service on the parties in this case shall proceed under the Court's E-Service pilot program for civil rights cases for the Eastern District of California. The purpose of the program is to get the complaint served on defendants faster so that they respond to the complaint sooner.

"E-Service" means that instead of having plaintiffs fill out service paperwork for the United States Marshal to mail to the defendants or through personal service, the Court will provide paperwork regarding the defendants electronically to the CDCR and the California Attorney General's Office, each of which have agreed to participate in this program. If these entities are unable to effectuate service, then the matter will be referred to the United States Marshal for service. However, to the extent that these individuals are unable to effectuate service of process, the Court may make further orders requiring the plaintiff to assist in providing additional information in order to effectuate service. Plaintiff need not attempt service on the defendant and need not request waiver of service.

8. In accordance with the pilot program, the Clerk of the Court is directed to serve this order via email on the CDCR, along with a summons, the operative complaint, and copies of the form Consent to Proceed Before a United States Magistrate Judge. No later than 40 days after service of this order, the CDCR shall file with the Court the "CDCR Notice of E-Service Waiver" advising the Court which defendant(s) in this order will be waiving service of process without the need for personal service by the United States Marshal Service. The CDCR shall also notify the Court whether any defendant(s) decline to waive service or could not be reached. The CDCR's Notice of Waiver shall also be served on the California Attorney General's Office and the United States Marshal Service.

9. Within 30 days after the filing of the CDCR's Notice of E-Service Waiver, the California Attorney General's Office shall file a waiver of service of process for any defendant who is waiving service of process consistent with Federal Rule of Civil Procedure 4(d)(1). A defendant who timely waives service need not serve an answer to the complaint until 60 days after the request was sent – or until 90 days after it was sent to the defendant outside any judicial district of the United States. For any defendant that the CDCR advises will be waiving service, the date the CDCR files its Notice of Waiver will be considered the date the request for waiver was sent. If any defendant waives personal service using this procedure, the plaintiff will not receive any documents until that defendant files an answer or other responsive pleading. If relief from this order is necessary, the Attorney General may seek relief by way of special appearance.

Any special appearance shall not be construed as personal appearance on behalf of any Defendant, and does not waive service or any defects in service, unless and until a waiver of service or responsive pleading is filed.

10. Upon filing the Notice of Waiver, the Clerk of Court shall provide to the United States Marshal a copy of the operative complaint, the summons, this order, and a complete USM-285 for each defendant who has not waived service according to the CDCR Notice of Waiver.  Upon receipt of those documents, the United States Marshal shall serve process of the complaint, summons, and this order upon each defendant who has not waived service pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).  The United States Marshal may command all necessary assistance from the Office of Legal Affairs for the CDCR, and may seek the assistance of a Special Investigator if the Litigation Officer at the institution is unable to assist in identifying and/or locating defendants.  If any confidential information is provided by a third party to effectuate service, including the CDCR, the United States Marshal shall maintain the confidentiality of all information provided to them.

11. Within 10 days after personal service is effected, the United States Marshal shall file the return of service, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service.  These costs shall be enumerated on the USM-285 form and shall include the costs incurred by the United States Marshal for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against each personally served defendant in accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2). The United States Marshal shall file the returned waivers of service, or the requests for waiver of service if returned as undelivered, once received.  These procedures will be directed by the Court without any need for the plaintiff to act.  The plaintiff will not receive any documents on these matters, unless the Court requires further information from the plaintiff, or the served defendant files an answer or other responsive pleading.

12. If a defendant subsequently waives service, the defendant is required to return the signed waivers to the United States Marshal.  The filing of an answer or a responsive motion does

not relieve a defendant of this requirement, and the failure to return the signed waivers may subject the defendant to an order to pay the costs of service pursuant to Federal Rules of Civil Procedure 4(d)(2).

**IT IS FURTHER RECOMMENDED** that all remaining claims and defendants be dismissed from this case.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these Findings and Recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

 Dated:  July 24, 2020

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

/DLB7;
DB/Inbox/Substantive/wolf0206.scrn